FILED IN MY OFFICE
DISTRICT COURT CLERK
4/28/2016 9:34:33 AM
James A. Noel
Chris Peck

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT**

**CHRIS LUTTRELL AND**
**DAWN DAVIDE LUTTRELL,**

     **Plaintiffs,**

**vs.**                        **No.** _____ D-202-CV-2016-02710 _____

**AMERICAN NATIONAL PROPERTY AND**
**CASUALTY COMPANY,**

     **Defendant.**

## COMPLAINT
## TO RECOVER DAMAGES FOR PERSONAL INJURY

### Summary

On March 6, 2015, a thief stole a 2013 Ford F-150 pickup truck belonging to Dawn Davide Luttrell, the owner of La Bella Spa and Salon, and her husband, Chris Luttrell, an Albuquerque City Police Officer.

Defendant ANPAC insured the pickup truck against theft, but because ANPAC refused to pay the insurance claim, Mr. & Mrs. Luttrell were forced to file a breach of contract and bad faith lawsuit against ANPAC.

After filing suit, Mrs. Luttrell received a threatening phone call directed against her children (this threat came from a person who is a suspect in the theft of the Luttrell's truck, and who had been cyber-stalking the Luttrell family, as well as vandalizing their property). Mrs. Luttrell immediately called the police to report this threat against her children, but ANPAC interfered with the police investigation by issuing a cease and desist letter to the police officer conducting the investigation.

Exhibit A

## Parties, Venue, and Jurisdiction

1. Plaintiffs Chris Luttrell and Dawn Davide Luttrell are husband and wife and reside in Sandoval County, New Mexico.

2. Plaintiff Chris Luttrell is a long-time law enforcement officer who served as a New Mexico State Police Officer and who is currently serving as an Albuquerque City Police Officer.

3. Plaintiff Dawn Davide Luttrell is a prominent businesswoman.

4. Defendant American National Property and Casualty Company (ANPAC) is a registered foreign insurer with an agent designated for service in Santa Fe County, New Mexico.

5. The incident giving rise to this Complaint occurred on December 10, 2015, in Bernalillo County.

6. Jurisdiction is proper in this Court.

7. Venue is proper in this Court.

### General Allegations

#### A. Breach of Contract and Bad Faith Lawsuit Against ANPAC

8. On or about March 6, 2015, a 2013 Ford F-150 pickup truck belonging to Mr. & Mrs. Luttrell was stolen out of their driveway at home.

9. A prime suspect in the theft of the pickup truck is Adrian Padilla (aka "A.J. Padilla") because (1) he had borrowed the truck on several occasions, (2) he knew the door password to unlock the truck, (3) he knew that Mrs. Luttrell kept inside the truck cabin the electronic key which automatically started the truck, and (4) he knew where Mrs. Luttrell lived.

Exhibit A

10. Mr. Padilla is also a prime suspect in the theft of the pickup truck because Mrs. Luttrell later discovered that Mr. Padilla had stolen her debit card and had unlawfully made charges to her account.

11. In the Spring of 2015, Mrs. Luttrell reported Mr. Padilla to the police for the theft of her debit card and for the unlawful charges.

12. At the time of the theft of their truck, Mr. & Mrs. Luttrell were insured against vehicle theft by ANPAC.

13. On March 6, 2015, Mrs. Luttrell filed an insurance claim with ANPAC for the theft of her pickup truck.

14. On July 16, 2015, Mr. & Mrs. Luttrell filed a breach of contract and bad faith lawsuit against ANPAC for (1) refusing to pay the Luttrell's valid insurance claim, and (2) conducting an investigation designed to delay the processing of the Luttrell's insurance claim.

## B. Threats Against the Luttrell's Children by Adrian Padilla

15. On December 8, 2015, Mr. Padilla called Mrs. Luttrell and implied that he was going to harm her 8-year-old twins while they were playing on the school playground.

16. Mr. Padilla described to Mrs. Luttrell the clothes that her children were wearing that day at school and stated: "I know your kids are on the playground."

17. Mrs. Luttrell immediately rushed to the elementary school where her 8-year-old twins attended.

18. Mrs. Luttrell also called the Albuquerque Police Department (APD), and in response, APD Officer Ralph Rodriguez arrived at Mrs. Luttrell's business.

19. Mrs. Luttrell reported the above details to Officer Rodriguez.

Page 3

Exhibit A

20. Officer Rodriguez's police report on this incident states:

> *It was because of this threat towards her children, I felt it necessary to contact Adrian and discuss the situation with him. I called Adrian's cell phone twice and he did not answer. I left a voicemail both times stating that he needs to call me back and the situation, referring to the phone calls and vague threats about her children, needs to stop now or it will get worse for him. Meaning that if he does not stop, I will have more reason and evidence to file criminal charges against him. I also felt it was in his best interest to have his perspective documented. However, my main goal was to speak to him and address the behavior he is being accused of and telling him to stop, especially since it involves the possible threat of children.*

### C. **ANPAC's Obstruction of Police Investigation**

21. Two days later, on December 10, 2015, ANPAC issued a cease and desist letter to Officer Rodriguez commanding that his contact with Mr. Padilla "must stop immediately."

22. The cease and desist letter declared: "We demand immediate compliance..."

23. ANPAC also threatened Officer Rodriguez by falsely accusing him of committing a felony, specifically, "witness intimidation and witness retaliation."

24. ANPAC also attempted to intimidate Officer Rodriguez by serving a copy of the cease and desist letter on Officer Rodriguez's APD northwest area commander.

25. However, ANPAC had previously been notified at a Court Scheduling Conference on December 3, 2015, that Mr. Padilla was unstable and dangerous, that he had threatened the lives of Mr. and Mrs. Luttrell, and that he had harassed their 18-year old daughter on Facebook.

26. ANPAC had the ability to conduct a criminal background check of Mr. Padilla.

27. ANPAC failed to conduct a criminal background check of Mr. Padilla prior to issuing the cease and desist letter.

Exhibit A

28. By deliberately failing to conduct a criminal background check of Mr. Padilla prior to issuing the cease and desist letter, ANPAC willfully and wantonly turned a blind eye towards the notice it had received on December 3, 2015, that Mr. Padilla was unstable and dangerous, that he had threatened the lives of Mr. and Mrs. Luttrell, and that he had harassed their 18-year old daughter on Facebook.

29. Had ANPAC conducted a criminal background check of Mr. Padilla prior to issuing the cease and desist letter, ANPAC would have learned that Mr. Padilla is a dangerous sociopath.

30. For example, ANPAC would have learned that Mr. Padilla is a convicted felon.

31. ANPAC would have also learned that Mr. Padilla has been arrested 8 times in Bernalillo County.

32. ANPAC would have learned that Mr. Padilla was also indicted and prosecuted for Rape and Kidnapping because he sodomized a victim who had been drugged into a state of unconsciousness in Mr. Padilla's apartment.

33. ANPAC would have learned from the Grand Jury testimony that Mr. Padilla threatened the witness: "If you accuse me of anything, I will destroy both of you [the witness and the victim]."

34. ANPAC would have learned through police reports that--in addition to these 8 arrests and felony prosecution--APD also received complaints from victims in 8 separate incidents accusing Mr. Padilla of the following crimes: residential burglary, forgery, larceny, and battery against women.

35. Prior to issuing the cease and desist letter, ANPAC also failed to review Officer Rodriguez's police report regarding the threats by Mr. Padilla against the Luttrell's children.

Page 5

36. Prior to issuing the cease and desist letter, ANPAC also failed to review Officer Rodriguez's lapel camera video which recorded his interview of Mrs. Luttrell.

37. By deliberately failing to review Officer Rodriguez's police report and lapel camera video prior to issuing the cease and desist letter, ANPAC willfully and wantonly turned a blind eye towards the danger that Mr. Padilla posed against the Luttrell's.

38. By issuing the cease and desist letter, ANPAC interfered with a police investigation into threats against the Luttrell's children.

39. By issuing the cease and desist letter, ANPAC also endangered the personal safety of the Luttrell's children.

40. In fact, Mr. Padilla had previously posted on his Facebook page a photo of the Luttrell's 8-year-old twins along with a threatening remark directed against Mr. and Mrs. Luttrell.

41. But instead of investigating Mr. Padilla, ANPAC instead initiated an investigation targeting Officer Rodriguez.

42. On March 25, 2016, sent an IPRA request to APD for Officer Rodriguez's personnel file, employment application, disciplinary history, performance evaluations, grievances, notices of contemplated action, notices of final action, complaints, plus internal affairs investigations dating from January 1, 2010, to the present.

## D. Previous Harassment by Adrian Padilla

43. Mr. Padilla had previously worked at Mrs. Luttrell's business, La Bella Spa and Salon, as a contract vendor to help set up the restaurant and to set up the restaurant's Facebook page.

Exhibit A

44. Mrs. Luttrell ultimately terminated this business relationship and escorted Mr. Padilla off the business premises because her sister, Kristin ("Krissy") Kos, discovered Mr. Padilla with a white powdered drug on his face.

45. Mr. Padilla subsequently hijacked Mrs. Luttrell's restaurant Facebook page and started posting defamatory statements.

46. On or about December 1, 2015, Mrs. Luttrell's business was graffitied by Mr. Padilla, which included "bitch" being scrawled across her business.

47. The day after her business was graffitied, Mr. Padilla called Mrs. Luttrell and said: "How do you like your walls?"

48. Having viewed the security video of her business being graffitied, Mrs. Luttrell believes that Mr. Padilla is the one who vandalized her business.

49. Then on the evening of December 18, 2015, Mr. Padilla cracked all the first floor windows at her business.

50. The day after this vandalism, Mr. Padilla called Mrs. Luttrell and said: "I left an extra gift for your mom's station"--which referred to the fact that the window that Mrs. Luttrell's mom works next to was broken all the way through, unlike the other windows that were only cracked.

51. During the month of December, Mr. Padilla started calling Mrs. Luttrell and telling her: "I'm going to make your life a living hell" and "I'm coming to get you bitch."

### E. **ANPAC's Reckless Conduct**

52. The conduct of the managerial agents of ANPAC was reckless and in bad faith.

53. The conduct of the managerial agents and employees of ANPAC, taken as a whole, showed that the conduct of ANPAC was reckless and in bad faith.

Exhibit A

## Count I

## Breach of Fiduciary Duty

54. ANPAC owes a fiduciary duty to Mr. & Mrs. Luttrell.

55. As part of its fiduciary responsibilities, ANPAC has a duty to act with the highest degree of honesty and loyalty towards Mr. & Mrs. Luttrell.

56. As part of its fiduciary responsibilities, ANPAC has a duty of utmost good faith, trust, confidence, and candor towards Mr. & Mrs. Luttrell.

57. As part of its fiduciary responsibilities, ANPAC has a duty to act in the interests of Mr. & Mrs. Luttrell and not itself.

58. As part of its fiduciary responsibilities, ANPAC is obliged to act primarily for the benefit of Mr. & Mrs. Luttrell.

59. ANPAC breached its fiduciary duty by issuing a cease and desist letter to the police officer conducting a police investigation into the threats against the Luttrell's children.

## Count II

## Breach of Covenant of Good Faith and Fair Dealing

60. ANPAC is obligated by the covenant of good faith and fair dealing.

61. Under the covenant of good faith and fair dealing, ANPAC has a duty not to do anything that would injure the rights of Mr. & Mrs. Luttrell to receive the benefit of their insurance policy.

62. ANPAC violated this covenant of good faith and fair dealing, and acted in bad faith, by issuing a cease and desist letter to the police officer conducting a police investigation into the threats against the Luttrell's children.

63. ANPAC's motive in issuing a cease and desist letter was to play hardball against Mr. & Mrs. Luttrell for filing the breach of contract and bad faith lawsuit against ANPAC.

64. In the alternative, ANPAC's motive was to unlawfully shield Mr. Padilla from being charged with a crime because Mr. Padilla is ANPAC's primary defense witness in the breach of contract and bad faith lawsuit brought by Mr. and Mrs. Luttrell.

## Count III
## Malicious Abuse of Process

65. ANPAC issued the cease and desist letter as part of a judicial proceeding, namely, the Luttrell's breach of contract and bad faith lawsuit against ANPAC.

66. In fact, ANPAC issued this cease and desist letter in conjunction with filing in state court an "Emergency Motion for Protective Order and Temporary Restraining Order" against Officer Rodriguez.

67. By issuing a cease and desist letter that interfered with a police investigation into threats against the Luttrell's children, ANPAC improperly used process in defense of the Luttrell's breach of contract and bad faith lawsuit.

68. ANPAC's primary motive in issuing the cease and desist letter was to accomplish an illegitimate end.

69. ANPAC's primary motive in issuing a cease and desist letter was to play hardball against Mr. & Mrs. Luttrell for filing the breach of contract and bad faith lawsuit against ANPAC.

70. In the alternative, ANPAC's primary motive was to unlawfully shield Mr. Padilla from being charged with a crime because Mr. Padilla is ANPAC's primary defense witness in the breach of contract and bad faith lawsuit brought by Mr. and Mrs. Luttrell against ANPAC.

Exhibit A

## Count IV
## Civil Obstruction of Justice

71. Obstruction of justice is a common law civil claim arising out of any act which prevents, obstructs, impedes, or hinders public or legal justice.

72. By issuing a cease and desist letter, ANPAC prevented, obstructed, impeded, or hindered public justice and endangered public safety by:

   a. interfering with a police investigation into the threats against the Luttrell's children;

   b. aiding a felon by giving such offender aid with the intent that the offender avoid arrest;

   c. resisting or abusing a peace officer in the lawful discharge of his duties; and

   d. aiding or abetting in the commission of a crime.

73. ANPAC should have conducted a reasonable investigation before recklessly engaging in such extreme and potentially life-threatening behavior as interfering with law enforcement.

74. Having previously been notified that Mr. Padilla was unstable and dangerous, that he had threatened the lives of Mr. and Mrs. Luttrell, and that he had harassed their 18-year old daughter on Facebook, ANPAC deliberately failed to conduct a reasonable investigation into the circumstances surrounding the police investigation into Mr. Padilla's threats against the Luttrell's children.

Exhibit A

## Count V
### Negligence

75. ANPAC owed a duty of care to Mr. and Mrs. Luttrell, and negligently breached that duty of care by issuing a cease and desist letter that endangered the personal safety of the Luttrell's children.

## Count VI
### Negligence *per se*

76. ANPAC committed negligence *per se* by violating the Criminal Code of Albuquerque, ROA 1994, ch. 12, art. II, § 12-2-19(D) (1974).

77. Section 12-2-19(D) of the Criminal Code prohibits "[i]nterfering with, obstructing or opposing any officer in the lawful discharge of his regular and affixed duties."

78. ANPAC violated § 12-2-19(D) by issuing a cease and desist letter that interfered with a police investigation into the threats against the Luttrell's children.

79. Mr. & Mrs. Luttrell are in the class of persons sought to be protected by the Criminal Code.

80. The injury to Mr. & Mrs. Luttrell is the type of injury the City Council sought to prevent through the Criminal Code.

Exhibit A

## Damages

81.   As a direct and proximate result of ANPAC's misconduct, Mr. & Mrs. Luttrell have

suffered mental anguish, including but not limited to, an increased apprehension

for the physical safety of their children.

## Prayer for Relief

**WHEREFORE**, Plaintiffs pray for judgment against Defendant in an amount to

be proven at trial which is reasonable to compensate them for their injuries, and for

damages to be sustained in the future, along with the costs of this action, pre- and post-

judgment interest, attorneys' fees, and any other relief which this Court may deem just

and proper.  Plaintiffs also pray for punitive damages.

Respectfully submitted,

**Mescall Law Firm, P.C.**

By:

**Thomas J. Mescall, II**
5201 Constitution Avenue NE
Albuquerque, New Mexico 87110
505.765.5548
*Attorney for Plaintiffs*

Exhibit A

FILED IN MY OFFICE
DISTRICT COURT CLERK
4/28/2016 9:34:33 AM
James A. Noel
Chris Peck

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT**

**CHRIS LUTTRELL AND**
**DAWN DAVIDE LUTTRELL,**

      **Plaintiffs,**

vs.                    **No.** _____ D-202-CV-2016-02710 __

**AMERICAN NATIONAL PROPERTY AND**
**CASUALTY COMPANY,**

      **Defendant.**

### PLAINTIFFS' CERTIFICATION
### REGARDING ARBITRATION UNDER LR2-603

I, Thomas J. Mescall, II, attorney for Plaintiffs, certify that:

This case **is not** subject to referral to arbitration under Local Rule 2-603.

At least one party seeks relief other than a month judgment and/or at least one

party seeks an award in excess of $25,000.00 inclusive of punitive damages and

exclusive interest, costs, and attorney fees.

I further certify that this case is at issue within the meaning of Section I,

Paragraph C of Local Rule 2-603.

                    Respectfully submitted,

                    **Mescall Law Firm, P.C.**

By: _____

          **Thomas J. Mescall, II**
          5201 Constitution Avenue NE
          Albuquerque, New Mexico 87110
          505.765.5548

          *Attorney for Plaintiffs*

Exhibit A

FILED IN MY OFFICE
DISTRICT COURT CLERK
4/28/2016 9:34:33 AM
James A. Noel
Chris Peck

**STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT**

**CHRIS LUTTRELL AND
DAWN DAVIDE LUTTRELL,**

      **Plaintiffs,**

**vs.**           **No.** _____ D-202-CV-2016-02710 _____

**AMERICAN NATIONAL PROPERTY AND
CASUALTY COMPANY,**

      **Defendant.**

## JURY DEMAND

Plaintiffs Chris Luttrell and Dawn Divide Luttrell request a six-person jury.

           Respectfully submitted,

           **Mescall Law Firm, P.C.**

           By: _____

           **Thomas J. Mescall, II**
           5201 Constitution Avenue NE
           New Mexico 87110
           505.765.5548

           *Attorney for Plaintiffs*

Exhibit A